UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

COOS BAY RV INVESTMENTS, LLC, a
Delaware Limited Liability Company,

    Plaintiff,

 v.

WHEELHAUS, INC., a Wyoming
Corporation, and JAMIE MACKAY, an
individual,

    Defendants.

Case No. 3:21-cv-00448-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

 Plaintiff Coos Bay RV Investments, LLC ("Coos Bay") sued Wheelhaus Inc., ("Wheelhaus") and its CEO Jamie Mackay ("Mackay") (collectively, "Defendants"). Coos Bay seeks damages for alleged breach of contract, breach of covenant of good faith and fair dealing, and fraud. Coos Bay now moves for default judgment on all claims and seeks an award of

Page 1 – FINDINGS AND RECOMMENDATION

damages and attorney's fees. The court has subject matter jurisdiction under 28 U.S.C. § 1332(a). Venue is proper under 28 U.S.C. § 1391(b)(2). For the reasons that follow, Coos Bay's motion should be granted.

*Background*

Defendant Wheelhaus, a Wyoming corporation, is a manufacturer and seller of small, prefabricated dwelling units including mobile homes and cabins. (Compl. ¶ 3.) Defendant Mackay is the president of Wheelhaus and maintains a residence in Wyoming. (*Id.*) Coos Bay, d.b.a. Bay Point Landing, is a Delaware corporation that operates a camping resort on the Oregon coast. (*Id.*) In December 2017, the parties entered into a contract that required Wheelhaus to manufacture seventeen cabins and deliver them to Coos Bay, in exchange for which Coos Bay would pay $1,314,600. (Compl. ¶ 12.) The contract guaranteed specifications, such as materials and floor plans, and also stipulated that the products delivered would be "of high quality and free of any material defects." (Compl. ¶ 15.) In addition, the parties agreed to a separate warranty: the products would be free from defect and Wheelhaus promised to repair or replace any products that were found to be noncompliant with the warranties in the two agreements (collectively, "the Agreements"). (Compl. ¶ 16.)

The contract specified that delivery would begin by May 1, 2018, two months in advance of Bay Point Landing's grand opening, scheduled for June 28, 2018. (Compl. ¶ 20.) Coos Bay alleges that Wheelhaus was aware of the grand opening date and that this was the basis for the timeline negotiated. (Compl. ¶ 23.) The first cabin was shipped on or around May 24, 2018, and by the date of the grand opening Wheelhaus had shipped only three cabins. (Compl. ¶¶ 23, 25.) At this point, Wheelhaus agreed to a new timeline requiring it to deliver the remaining cabins by

July 24, 2018. (*Id.*) Delivery was finally completed in November 2018, at least six months after the contractually agreed-upon date. (Compl. ¶ 26.)

In addition to the late delivery, Coos Bay alleges that each of the cabins was grossly defective when delivered and that Wheelhaus failed to meet its obligations under the warranty provisions in the Agreements. (Compl. ¶ 27.) Coos Bay lists numerous significant defects affecting many aspects of the cabins, including defective plumbing, sub-code electrical wiring, nonfunctional or improperly installed appliances, and leaking roofs. (Compl. ¶ 28.) Coos Bay alleges that Wheelhaus promised to make the warranty repairs and bring the cabins up to specifications. (Compl. ¶ 31.)

In March 2019, Wheelhaus sent a crew to perform the needed work. (Compl. ¶ 33.) The crew had not completed important repairs by May 2019, at which point Coos Bay resorted to hiring third parties to complete the repairs. (*Id.*) Coos Bay determined that the cabins were rentable no earlier than February 2020. (Compl. ¶ 36.)

Coos Bay alleges that Defendants knew they would be incapable of performing the Agreements at the time of signing, that they misrepresented Wheelhaus's capabilities, and that they never intended to fulfill their obligations under the Agreements. (Compl. ¶ 21.) Coos Bay claims that Wheelhaus's promotional practices and advertising showed a large professional manufacturing facility when in reality they were operating out of recently-erected domed tents. (Compl. ¶ 25.)

Coos Bay asserts that Mackay operates Wheelhaus as his alter ego, not as a separate and distinct entity, and that as such he is not shielded from personal liability by Wyoming's corporate limited liability laws. (Compl. ¶ 45.) Coos Bay asserts that Mackay exerts complete control over

Wheelhaus, and that he purposely and strategically undercapitalizes Wheelhaus. (*Id.*) Coos Bay further attests that Mackay does this to avoid having to pay damages from legal actions, such as the instant case, while allowing him to enjoy the benefits of a seven-figure contract. (*Id.*)

In March 2021, Coos Bay brought this lawsuit against Wheelhaus and Mackay. (Compl. ¶¶ 38–65.) Defendants were properly served under Rule 4 of the Federal Rules of Civil Procedure and Rule 9 of the Oregon Rules of Civil Procedure. (Dkt. Nos. 8 and 9.) Defendants have not appeared or otherwise defended the action. (Dkt. No. 5.) Coos Bay moved for default against Defendants, which the clerk entered on May 17, 2021. (Dkt. No. 13.) Coos Bay now seeks default judgment against Defendants and an award of damages. (Dkt. No. 16.)

*Legal Standard*

I. <u>Default Judgment</u>

Upon entry of default, a party may apply to the court for default judgment. FED. R. CIV. P. 55(b)(2). The court has discretion to grant or deny a motion for default judgment. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 852 (9th Cir. 2007) (default judgments reviewed for abuse of discretion); *See also PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment. Rather, granting or denying relief is entirely within the court's discretion.") (internal quotations omitted). Prior to entering default judgment, a court may order hearings for purposes of, among other things, determining damages to be awarded. FED R. CIV. P. 55(b)(2).

To award default judgment, the movant's well-pleaded allegations must be sufficient to support the claims asserted. *Amini Innovation Corp. v. KTY Int'l Mktg.*, 768 F. Supp. 2d 1049, 1055 (C.D. Cal. 2011) (applying Rule 12(b)(6) standard to motion for default judgment). In

considering a motion for default judgment, the court takes as true all well-pleaded factual allegations in a complaint except for those that relate to calculation of damages. *NewGen, LLC v. Safe Cig, LLC,* 840 F.3d 606, 617 (9th Cir. 2016). The court does not accept as true conclusions of law or facts that are not established by the pleadings. *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1171 (9th Cir. 2012) citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) ("[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment."). Factual allegations not related to damages are deemed admitted. FED. R. CIV. P. 8(b)(6); *see also* Seiko Epson Corp. v. Koshkalda, 799 F. App'x 463, 466 (9th Cir. 2019), cert. denied, 141 S. Ct. 956, 208 L. Ed. 2d 494 (2020) ("averments of the complaint regarding the amount of damages were not deemed true by virtue of the appellants' defaults.").

II.  Governing Law

The parties' contract for manufacturing the cabins stipulates that it "shall be construed in accordance with the laws of the state of Wyoming." (Compl. Ex. 1.) Oregon courts generally enforce contractual choice-of-law provisions. *See Capital One Bank v. Fort*, 242 Or. App. 166, 170 (2011) (noting exceptions as described in RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(1971)). Coos Bay requests that the court apply Wyoming law pursuant to the contract's terms. (*See* Compl. ¶ 46.) Accordingly, the court applies Wyoming law to Plaintiff's claims.

*Discussion*

I.  Claims against Wheelhaus

For reasons of both policy and due process, courts favor judgment on the merits over default judgment. *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009).

Default judgment is appropriate, however, when a party's failure to respond effectively halts the adversarial process. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). The Ninth Circuit has adopted a non-exclusive seven-factor test to guide courts in considering whether default judgment is appropriate. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). The seven "*Eitel* factors" are "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *NewGen*, 840 F.3d at 616. The court considers each of the *Eitel* factors, in turn.

### A.    Potential Prejudice to Plaintiff

The first *Eitel* factor asks whether denial of default judgment will prejudice Plaintiff. *Eitel*, 782 F.2d at 1471–72. Though the court does not assume as true plaintiff's calculation of damages, it is clear from the Complaint that Coos Bay suffered a significant injury as a result of Wheelhaus's alleged acts and failures to act. Those injuries include lost rental income for at least twenty-one months, which Coos Bay alleges to be more than $1.2 million, as well as costs incurred in hiring contractors to repair the defective cabins. Should the court to decline to enter default judgment, Coos Bay would have no alternative avenue for remedy, resulting in irreparable injury. This potential prejudice to Plaintiff weighs in favor of default judgment.

B.   *Sufficiency and Merits*

The second and third *Eitel* factors together consider the merits and sufficiency of the plaintiff's claims. *Elec. Frontier Found. v. Glob. Equity Mgmt. (SA) Pty Ltd.*, 290 F. Supp. 3d 923, 941 (N.D. Cal. 2017). These factors weigh in favor of default judgment.

1.   breach of contract

To prove breach of contract under Wyoming law, the plaintiff must show "a lawfully enforceable contract, an unjustified failure to timely perform all or any part of what is promised therein, and entitlement of injured party to damages." *Larson v. Burton Constr., Inc.*, 2018 WY 74, ¶ 15. A plaintiff has the burden of proving damages with "a reasonable degree of certainty." *Cottonwood Valley Ranch, Inc. v. Roberts*, 874 P.2d 897, 899 (Wyo. 1994). Damages may be awarded such that the plaintiff is restored to "the same position as if the contract had been performed, less proper deductions." *Capshaw v. Schieck*, 2002 WY 54, ¶ 10, 44 P.3d 47, 52 (Wyo. 2002).

Coos Bay has demonstrated the breach of contract convincingly. The Agreements constituted a lawfully enforceable contract. Wheelhaus failed to timely perform its duties under the Agreements, leaving Coos Bay with losses that would not have been incurred had the contract been performed, and there appears to be no justification for the failure. Coos Bay asserts that it has complied with all its obligations under the Agreements, a fact which the court accepts as true. Accordingly, the second and third factors weigh in favor of default judgment on the breach of contract claim.

        2.        breach of covenant of good faith and fair dealing

Wheelhaus exhibited behavior inconsistent with good faith and fair dealing. Wyoming imposes an "obligation of good faith" in the performance and enforcement of all contracts enacted under its implementation of the Uniform Commercial Code. WYO. STAT. § 34.1-1-304 (2021); *see also Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, ¶ 24, 18 P.3d 645, 655 (Wyo. 2001) (adopting the similarly worded RESTATEMENT (SECOND) OF CONTRACTS § 205 for contracts outside the UCC). Good faith is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing." *Id.* § 201.

Coos Bay alleges breach of the covenant of good faith and fair dealing on the basis of three allegations. First, Coos Bay points to "false progress reports, excuses, and promises" to Coos Bay concerning the long delays in construction and delivery. (Compl. ¶ 50.) Second, Coos Bay asserts that the delay in constructing the cabins was deliberate. *Id.* Finally, Coos Bay claims that Wheelhaus "purport[ed] to repair the cabins when in fact did not do so." *Id.*

Coos Bay does not plead a factual basis for its belief that Wheelhaus intended to delay construction. Likewise, Coos Bay does not support its claim that Wheelhaus purported to repair the cabins but did not. Rather, the complaint alleges that Wheelhaus sent a small crew to make repairs and that, after two months, the crew had not completed repairs, causing Coos Bay to hire third parties to make the repairs. Coos Bay makes no allegation that the crew claimed to have finished the repairs.

Coos Bay does plead a factual basis for its claim of "false progress reports, excuses, and promises." Coos Bay attests that its agents were in continuous communication with Wheelhaus as the contract deadline came and went. (Compl. ¶ 24.) Coos Bay alleges that Wheelhaus

Page 8 – FINDINGS AND RECOMMENDATION

blamed delays on "a new federal electronic logging system," or on "curfews and permitting around weekends," or on its decision to purchase new trucks and changing shipping companies. *Id.* Wheelhaus also missed multiple deadlines, was very slow in addressing its mistakes, and ultimately did not correct the situation, forcing Coos Bay to engage third party contractors. (Compl. ¶ 25–33.)  The court agrees that the false updates and promises alleged are not consistent with "the reasonable commercial standards of fair dealing."  This is especially so when the delays caused Coos Bay to miss both its grand opening and its peak camping season, purposes which Wheelhaus knew were key to Coos Bay's decision to enter into the contract.  As such, the second and third factors weigh in favor of default judgment on the breach of covenant of good faith claim.

        3.      fraud in the inducement

Coos Bay's pleadings are sufficient to show fraud.  A party alleging fraud must state the circumstances of the alleged fraud "with particularity." FED. R. CIV. P. 9(b).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  Allegations of fraud based on information and belief generally do not satisfy the heightened pleading standard expressed in Rule 9(b). *Wehlage v. EmpRes Healthcare, Inc.,* 791 F. Supp. 2d 774, 789 (N.D. Cal. 2011).  Information and belief may be sufficient as related to "matters peculiarly within the opposing party's knowledge" and when the allegation is accompanied by "facts upon which the belief is founded." *Id.,* quoting *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987).  The plaintiff still must present a factual basis for the belief claimed, however. *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).

In Wyoming, the elements of fraud are, "false representation made by the defendant which the plaintiff relies upon to his detriment.  The false representation must be one which induces

Page 9 – FINDINGS AND RECOMMENDATION

action and is reasonably believed by the plaintiff to be true." *Husman, Inc. v. Triton Coal Co.*, 809 P.2d 796, 799 (Wyo. 1991). Coos Bay alleges that Wheelhaus falsely represented that it could manufacture cabins to the specifications in the Agreements and deliver them by the agreed-upon date. (Compl. ¶ 57.) It claims that Wheelhaus knew at the time of signing that it would not be able to perform the Agreements and that it never intended to do so. (Compl. ¶ 11.) Coos Bay further asserts, and the court accepts as true, that Coos Bay reasonably believed Wheelhaus's representations and that those representations induced Coos Bay into signing the Agreements. (Compl. ¶¶ 59–60.)

Coos Bay supports its claim of false representation with a factual assertion that its representatives visited the Wheelhaus site and, instead of the professional, high-end manufacturing facility portrayed on their website, they found "domed tents on empty property, which appeared to have been recently erected." (Compl. ¶ 25.) This statement plausibly supports Coos Bay's belief that Wheelhaus had promised more than it was capable of delivering. Wheelhaus's knowledge of its ability and intent to perform the contract is information that is peculiarly within Wheelhaus's control. Because knowledge and intent may be pled generally, Coos Bay's allegations are sufficient.

Coos Bay has pleaded its fraud allegation with particularity and buttressed its claim with a factual assertion—which the court accepts as true—of the basis for that allegation. Coos Bay has proved each of the elements for fraud under Wyoming law, alleging false representation by Wheelhaus and its reasonable reliance on that representation to its detriment. The second and third *Eitel* factors therefore favor default judgment on the fraud claim.

C.  *Sum of Money at Stake*

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of a defendant's conduct." *Elec. Frontier Found.*, 290 F. Supp. 3d at 947. Large sums of money at stake typically weigh against default judgment. *United States v. Kelton*, No. 1:15-CV-197-AA, 2015 WL 9809799, at *2 (D. Or. Dec. 19, 2015). However, where damages are alleged, a defendant "should not be allowed to evade judgment as a result of failing to appear." *United States v. Stuck*, No. 3:19-CV-01161-SB, 2020 WL 4516917, at *3 (D. Or. July 9, 2020), adopted, No. 3:19-CV-1161-SB, 2020 WL 4506781 (D. Or. Aug. 5, 2020).

The seven-figure award Coos Bay requests is large, but the sum reasonably reflects Coos Bay's injury and is the natural result of Wheelhaus's actions after entering into a high-paying contract. Furthermore, the damages Coos Bay seeks arise entirely under its breach of contract claim. Although Coos Bay also seeks default judgment on its fraud and breach of covenant of good faith and fair dealing claims, it does not seek additional damages under those claims. This factor weighs in favor of default judgment.

D.  *Likelihood of Dispute*

The fifth *Eitel* factor asks whether Defendants would have grounds for disputing the material facts surrounding the case were they to appear. *Elec. Frontier Found.*, 290 F. Supp. 3d at 947. "Upon entry of default, the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true, with the exception of the allegations as to the amount of damages." *PepsiCo*, 238 F. Supp. 2d at 1175. As discussed above, Coos Bay's pleadings are sufficient to state claims upon which relief can be granted. Wheelhaus would not have a colorable claim to the contrary, so this factor also weighs in favor of default judgment.

Page 11 – FINDINGS AND RECOMMENDATION

### E. Possibility of Excusable Neglect

The sixth *Eitel* factor concerns "whether the defendant's default may have been due to excusable neglect." *Rasmussen v. Dublin Rarities*, No. C 14-1534 PJH, 2015 WL 1133189, at *16 (N.D. Cal. Feb. 27, 2015). Wheelhaus was served in-person via process server on April 14, 2021. (Dkt. No. 11 ¶ 2.) In addition, summonses and case documents were served on Mackay both in-person by process server and by First Class Mail on April 12, 2021. (Dkt. No. 8.) There is nothing in the record to suggest any reason for Wheelhaus's failure to defend against the action, let alone an excusable reason. This factor weighs in favor of default judgment.

### F. Policy Against Default Judgment

The final *Eitel* factor serves as a reminder to the court that judgment on the merits is preferred over judgment by default. *Westchester Fire Ins.*, 585 F.3d at 1189. Despite this, "when a party completely fails to respond, a decision on the merits not feasible." *Kelton,* 2015 WL 9809799, at *2. Here, Wheelhaus "ha[s] not appeared, responded, plead[ed], or otherwise defended the claims asserted against them in this case," and also has not been in contact with Coos Bay's attorneys-of-record. (Dkt. No. 18 ¶ 5.) A decision on the merits thus is unattainable and denying default judgment would in turn deny Plaintiff any relief. This factor is either neutral or weighs in favor of default judgment.

### G. Conclusion

Each of the *Eitel* factors weighs in favor of default judgment, and most of the factors do so strongly. Accordingly, the court finds that default judgment should be granted as to the claims against Wheelhaus.

II.   Claims against Mackay

In addition to its claims against Wheelhaus, Coos Bay seeks to hold Mackay personally liable for the actions of Wheelhaus.  Under Wyoming law, corporations are legally distinct from their employees, *GreenHunter Energy, Inc. v. W. Ecosystems Tech., Inc.*, 2014 WY 144, ¶ 12, but Wyoming courts have held that the legal separation will be disregarded in exceptional circumstances to avoid shielding corporations from liability for behavior resulting in injustice. *Mantle v. N. Star Energy & Constr. LLC,* 2019 WY 29, ¶ 126.  "For a corporation to be accorded treatment as a separate entity, it must exist and function as such and not be the alter ego of the person owning and controlling it and cannot be used or ignored just to fit the convenience of the individual."  *PanAmerican Min. Servs., Inc. v. KLS Enviro Res., Inc.,* 916 P.2d 986, 990 (Wyo. 1996) (quoting *Amfac Mechanical Supply Co. v. Federer*, 645 P.2d 73, 79 (Wyo.1982)).

Coos Bay's argument for piercing the corporate veil rests on three essential allegations, each arguing that Wheelhaus is Mackay's alter ego.  First, Coos Bay claims that Mackay "operates Wheelhaus with complete control over [its] finances, interests, and operations." (Compl. ¶ 45.)  Second, it claims that Mackay purposefully and strategically undercapitalizes Wheelhaus.  *Id.*  Third, Coos Bay claims that Mackay "personally received all of the benefits of the Contract."  *Id.*  Each of these is an example of a factor Wyoming courts have accepted as being pertinent to making determinations on an alter ego theory.  *Ridgerunner, LLC v. Meisinger,* 2013 WY 31, ¶ 14 (quoting *Amfac*, 645 P.2d at 77–78).

Coos Bay supports its allegations by asserting that Wheelhaus uses stock photos of cabins to assure customers of progress being made on their order, despite manufacturing not having started, and also manufacturing "photo-ready" cabins—cabins which "are nowhere near complete,

Page 13 – FINDINGS AND RECOMMENDATION

but . . . photograph nicely enough to convince customers that manufacturing is complete." (Compl. ¶ 22.)  Coos Bay further claims that Wheelhaus

> cannot and does not begin manufacturing luxury cabins for a specific order [until] after it receives an order and an initial payment from a *subsequent*, different customer.  In other words, Wheelhaus promises to manufacture luxury cabins to certain specifications on an agreed-upon timeline in exchange for an agreed-upon payment, but . . . instead uses the money from that customer to manufacture . . . cabins for an earlier customer.

(Compl. ¶ 21) (emphasis in original).

The court agrees that these assertions support a conclusion that Wheelhaus is undercapitalized.  Accepting as admitted the factual assertions that Mackay operates Wheelhaus with complete control and that he receives all the benefits of Wheelhaus's contracts, the court finds that Coos Bay has successfully pierced Wheelhaus's corporate veil under an alter ego theory.  Accordingly, under the same reasoning as applied to the claims against Wheelhaus, the court finds that Mackay is personally liable for each of the claims brought him.

III.  <u>Damages</u>

Coos Bay requests damages in the amount of $1,538,444.58 plus pre-judgment interest, attorney's fees, and costs.  When awarding default judgment, the defendant is not assumed to admit the plaintiff's assertions related to the amount of damages.  *PepsiCo,* 238 F. Supp. 2d at 1175.  In the Ninth Circuit, a court is required to hold a hearing to determine damages when the amount claimed is not a liquidated sum or capable of mathematical calculation.  *Davis v. Fendler,* 650 F.2d 1154, 1161 (9th Cir.1981); see also *Rubicon Glob. Ventures, Inc. v. Chongquing Zongshen Grp. Imp./Exp. Corp.,* 630 F. App'x 655, 658 (9th Cir. 2015) ("The district court abused its discretion by failing to hold a hearing on damages prior to entering the default judgments[.]")

Coos Bay has submitted documentary evidence of $305,874.58 in out-of-pocket repair costs, (Dkt. No. 17-1), and also requests lost rental profits in the amount of $1,232,570. (Dkt. No. 16 at 17.) To calculate its lost rental profits, Coos Bay determines its probable income from the cabins, had they been available, and subtracts the probable costs associated with marketing, administration, and maintaining the cabins during the same period. *Id.* In calculating each of these numbers, Coos Bay uses comparable data for the period after February 2020—the time when the cabins became available—to estimate the likely income it would have generated and costs it would have incurred had the cabins been available in time for its grand opening. *Id.* The court has conducted a hearing and accepts Coos Bay's methodology as well-reasoned and thorough.

*Conclusion*

The court finds that the majority of the *Eitel* factors weigh in favor of default judgment and that Mackay operates Wheelhaus as its alter ego. Accordingly, the court RECOMMENDS:

1. Plaintiff's motion for default judgment be GRANTED against Defendants Wheelhaus, Inc., and Jamie Mackay;

2. Plaintiff be awarded damages in the amount of $1,538,444.58 in lost profits and out-of-pocket expenses;

3. Plaintiff be awarded prejudgment interest at seven percent per annum, calculated from May 1, 2018;[1] and

4. Plaintiff be awarded reasonable attorneys' fees and costs.

*Scheduling Order*

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due within 14 days. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of October, 2021.
14th

JOHN V. ACOSTA
United States Magistrate Judge

---

[1] Coos Bay requests prejudgment interest under the Oregon statutory rate of nine percent per annum. OR. REV. STAT. § 82.010(1)(a). Absent contractual language to the contrary, the court applies the Wyoming statutory rate of seven percent per annum. WYO. STAT. ANN. § 40-14-106(e); see also *Lew v. Lew*, 2019 WY 99, ¶ 20 ("[I]n the absence of a contractual agreement to a different percentage, the appropriate measure of prejudgment interest is the seven percent per annum stated in . . . § 40-14-106(e)." For purposes of prejudgment interest, the court calculates the date of breach as the date when the cabins were initially due to be delivered. *Pennant Serv. Co. v. True Oil Co.*, LLC, 2011 WY 40, ¶ 36 ("Prejudgment interest constitutes a penalty for failure to pay money when due.")

Page 16 – FINDINGS AND RECOMMENDATION